## Milligan's Appeal.

1. Where the facts found by an auditor are not materially disputed, but his conclusions from them are based wholly upon inferences drawn from those facts, the Supreme Court will reverse a decree of the court below confirming the auditor's report, if, in their opinion, the conclusions are not warranted by the facts.

2. A., an old woman in feeble health, owned $4000 in United States coupon bonds which she kept in a tin box under her bed. She made a will whereby, inter alia, she bequeathed said bonds and nominated B. as her executrix. B. acted as A.'s nurse, lived with her, had free access to the box, was in the habit from time to time of cutting off the coupons and collecting them, paid A.'s bills, and otherwise attended to A.'s business affairs. Some short time before A.'s death, B. exhibited the box to a servant, telling her

[Milligan's Appeal.]

there were but $1700 dollars worth of bonds in it, but without mentioning other valuables belonging to A. deposited therein. B. assigned as her reason for this conduct the fact that she was sick and fearing that she might die wished a third person to know where the box and the bonds were. Subsequently, upon A.'s death, B. filed her account as executrix, wherein she charged herself with only $1700 worth of the bonds; she accounted satisfactorily for the disposition of $800 worth of them during testatrix's lifetime, but did not attempt to explain the disappearance of the residue. In settling up the estate she misconducted herself in various ways as to other portions of testatrix's property. *Held* (reversing the decree of the court below), that the circumstances did not warrant the finding as a matter of fact that the accountant had taken the missing bonds, and that she should not be surcharged with the value of them.

3. Misconduct on the part of an executrix in converting her testatrix's property to her own use, in attempting to buy real estate at her own sale, and in making use of trust funds for her own benefit, will constitute sufficient ground to warrant the court in refusing to allow her the usual commissions.

March 31st 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., having been of counsel, did not sit.

Appeal from the Orphans' Court of *Northampton county:* Of January Term 1881, No. 219.

This was an appeal by Sarah Milligan, executrix of the estate of Euphemia Dawes, deceased, from the final decree of the said Orphans' Court, dismissing her exceptions to the report of the auditor of her account as executrix, and confirming the said report.

The facts proved before the auditor were as follows: Mrs. Euphemia Dawes died July 2d 1872, in her eighty-first year; she had made her will November 17th 1866, whereby she appointed Sarah Milligan her executrix, and bequeathed to her three shares of Delaware Bridge stock, and bequeathed the remainder of her personal estate, and the proceeds of her real estate, to various relatives. For many years before her death, Mrs. Dawes was more or less incapacitated by physical infirmity from attending to household or business matters; she was paralyzed in her feet and practically helpless, although not mentally imbecile. Sarah Milligan lived with the testatrix from 1865 to her death, nursed her carefully with constant attention, and attended to her business matters, such as the collection of rents, payment of bills, &c., at her direction. They boarded together with a brother-in-law of Miss Milligan, in a house which the latter had purchased from Mrs. Dawes in 1866, for $3500, and which Miss Milligan's brother-in-law rented from Miss Milligan in consideration of their board. In February 1869, proceedings in lunacy were commenced at the instance of Mrs. Dawes' brother, who feared that Miss Milligan was mismanaging her estate. Pending these proceedings, in 1869, Miss Milligan exhibited to Henry Green, Esq., counsel for Mrs. Dawes, at his office, Mrs. Dawes's tin box, containing her securities, of which Mr. Green made a list. Among the securities in the box at that

time were $4000 in United States 5-20 bonds.   A proposition was made and accepted by the counsel in the lunacy proceedings that the box and securities should be placed in the possession of Mr. John Stewart, president of the First National Bank of Easton, and the lunacy proceedings were discontinued.   Mr. Stewart subsequently declined to take charge of the box, which was then taken from the bank and given back to Mrs. Dawes.   The evidence showed that she kept it under her bed, and that Miss Milligan would occasionally, at her request, hand it to her in bed, when she would cut off coupons, &c.   This she was in the habit of doing until about two years before her death, when she became too feeble. During this period, and after Mrs. Dawes's death, Miss Milligan had free access to the box and its contents.

Upon Mrs. Dawes's death, in July 1872, Miss Milligan proved the will and took out letters testamentary, and on August 2d 1872, she filed an inventory, in which she charged herself, among other assets, with only $1700 United States 5-20 bonds.

The executrix filed her account in April 1873, showing a balance due the estate of $11,047.36.   Before the auditor John Wall, a nephew of the deceased, testified that in October 1872, he saw the accountant and talked about the estate.   " I said to her, ' Miss Milligan, I understood, three years ago, that there were $4000 of government bonds, and now I see by the inventory there are only $1700 of them.'   Then she started to tell me $300 was paid to the church; $500 given to her; $500 were her own; and I said, ' There is $1000 missing yet.'   There she stopped a bit and said, ' I guess it will be settled up satisfactorily.'   That was about all on that subject." ·

Mrs. Mary R. Dodd testified that she was engaged as a domestic and lived with Mrs. Dawes and Miss Milligan for several weeks in 1871, and again in 1872; that in March 1872, Miss Milligan brought the box or the bonds into the kitchen and showed them to her.   Her testimony on the subject was as follows : " I did not count the bonds myself.   I had never seen any before.   I don't know how many bonds in number there were.   I only know how much they were from what she told me.   She told me there were $1700 worth of bonds.   I did not take them and add them up to see how much they were.   I took her word for that.   I never saw the bonds but this once."

Q. What is the reason Mrs. Milligan showed you these bonds ?

Ans. She was sick at the time.   She wanted some one to know where the box and the bonds were, so that some one could take care of them for Mrs. Dawes.   She had the neuralgia at the time, and she was afraid she might die in the night.   I staid there during the night, but I always slept up stairs.   I slept up stairs that night.   I think it was in the morning when she showed me the bonds.   Miss Milligan was around in the room during the day,

[Milligan's Appeal.]

but at times she was very sick. She did not tell me she was afraid she might die during that night particularly, but that she might be taken away suddenly. She was taking medicine. I think she got it from Dr. Green. I don't know whether she did or not. She had no doctor attending her at the house that I know of. I did not have to sit up with her any night. She was not confined to her bed at all at this time, nor afterwards. She did not show me anything else but the bonds. She did not tell me of any certificates or stock, nor of anything else that was in the box except the bonds.

The executrix proved that Mrs. Dawes, prior to her death, donated $300 to a church in course of erection, and that three $100 government bonds were sold by Mrs. Dawes's direction, and $300 of the proceeds paid to the church; this was not denied. The accountant further testified that she was to receive from Mrs. Dawes, for her board and rent, $500 a year, and that Mrs. Dawes told her she should make her charges for taking care of her, and should be well paid for it; that Mrs. Dawes paid no rent, but gave her a $500 bond for her services from 1865 to 1869.

The accountant gave no explanation of the disappearance of the $1500 government bonds not included in the inventory or accounted for.

The auditor, after reviewing the evidence, reported on this subject as follows : " We have, therefore, traced, by the admission of the accountant, the whereabouts of $800 worth of government bonds, and adding this sum to the $1700 of bonds charged in the inventory, there is still missing and unaccounted for $1500 of the same securities.

" The testatrix and the accountant were living together for a period of a number of years prior to the death of Mrs. Dawes, the testatrix, and the accountant was acting in the capacity of nurse, housekeeper and as the financial agent of Mrs. Dawes. It is proven by an abundance of testimony, that during the last two years of the testatrix's life, and some time prior to that, Mrs. Dawes was physically and also mentally incompetent to transact any business, and that the accountant did attend to and transact her business, such as cutting off the coupons, collecting the interest, rents, paid bills and exercised general supervision over Mrs. Dawes's affairs. Government bonds such as these, payable to bearer, are like any species of money ; they pass by mere delivery. No written transfer is necessary. No acknowledgment before some public officer is required, nor does the name of any holder appear upon them in any way. They are payable to bearer, and the facilities for acquiring them are therefore equal to the facilities in disposing of them in the same manner as the acquirement of money or notes, and hence the same inference from circumstances arise with respect to them that would arise as to money or notes.

" The bonds were in the possession of the accountant during the

pending of the lunacy proceedings when she brought them to Mr. Green's office, returned them to the residence of Mrs. Dawes, and were locked in the box by Mrs. Dawes, afterwards taken by the accountant to the bank and subsequently removed by her from the bank to the residence of Mrs. Dawes. And from *that* time until Mrs. Dawes' death, the box containing the securities was in the care and under the surveillance of the accountant. She opened the box at her pleasure, cut the coupons off whenever they fell due, and the only recollection she has of the removal of any were the three $100 bonds, the proceeds of which were given to the Episcopal Church, and one $500 bond appropriated by herself for services rendered to Mrs. Dawes from 1865 to 1869 with Mrs. Dawes's assent.

" The witness, Mary R. Dodd, testifies that the accountant said (when she showed her the bond in March 1872), she was afraid she (herself) might die that night or be suddenly taken away, and she wanted some one to know about the box and the bonds. But her cross-examination shows that the accountant was not sick, was not confined to her bed, or her room, had no doctor in attendance, and showed no symptoms of dangerous disease then or afterwards. Therefore, it can be inferred that the reason given was a false one, and it might be further inferred that the accountant was trying to manufacture evidence for herself, to be used after Mrs. Dawes's death. If her reason given to Mary R. Dodd for wanting some one to know about the box and the bonds was true, and a genuine one, why did she not count the bonds? or let the witness count them? Only in that way could the witness have knowledge. Or why did she not take the witness in the next room, where Mrs. Dawes was, and in her presence produce the bonds, and let the witness ascertain by personal inspection what amount was there, if the reason given by the accountant was the real and genuine reason? Nor does the accountant say anything to the witness about the other securities in the box, which were of greater value than the $1700 in government bonds. The circumstances strongly indicate that the accountant was only seeking to guard against any subsequent allegation that there were $4000 instead of $1700 in United States government bonds.

" Upon the whole testimony in the case, the conduct of the accountant and the circumstantial proof adduced before the auditor, it is a moral certainty that the accountant either has these bonds or their proceeds, and under all the facts in this case, your auditor is clearly of that opinion, and accordingly so finds, that the accountant should be surcharged with $1500 of United States government bonds, together with the legal interest due thereon from the time of the testatrix's death."

The accountant claimed credit " for services in taking care of decedent and services rendered unto and for said decedent during

1 OUTERBRIDGE—34

her lifetime $700. The accountant further claimed, before the auditor, as additional compensation for her care, nursing and attendance from February 1869 to her death, the sum of $1200. The auditor allowed the credit of $700 claimed in the account, but disallowed the claim for additional compensation.

The accountant also claimed in her account "for her commissions, compensation and services in making settlement of the estate $753.60." The legatees objected to this item on the ground that the misconduct of the accountant in her administration of the estate had been such as to deprive her of the right to commissions. Considerable testimony was taken on this subject, the main points of which are referred to in the opinion of this court. The auditor disallowed the claim for commissions.

Exceptions filed by the accountant were dismissed by the court, MEYERS, P. J., saying in an opinion filed: "We have examined the large mass of testimony returned by the auditor, as well as the reasons and authorities given by the auditor in support of his conclusions of law and facts, and we are of the opinion that all the exceptions to the report (except the thirtieth, relative to the collateral inheritance tax) must be dismissed. In reaching this conclusion we do not adopt all the reasoning of the auditor, while, in other respects, his conclusions might have been materially strengthened by a more elaborate presentation of the testimony, to some of which he failed to make any reference whatever.

"The most important question of appeal raised by the record is the surcharge of the accountant by the auditor of $1500 United States bonds, interest, &c. The evidence on this branch of the case is wholly circumstantial, and while we are of the opinion that the finding of the auditor is fairly sustained by the evidence, we are free to say that the circumstances are not very strong, and are of such a character as might fail to produce conviction in other minds."

A decree was accordingly entered confirming the auditor's report. The accountant, Sarah Milligan, took this appeal, assigning for error, inter alia, the decree surcharging the accountant with $1500 of U. S. 5-20 bonds, with interest; and refusing to allow the accountant commissions as executrix.

*B. F. Fackenthall,* for the appellant.—There is no disputed question of law on this appeal, nor is any material question of fact disputed. We complain that the auditor and court erred in their inferences from the facts found. The auditor found as a fact that Miss Milligan was the nurse of Mrs. Dawes, and that as such she had access to the box containing Mrs. Dawes's securities; he *infers* from those facts that she was Mrs. Dawes's financial agent, and as such was responsible for bonds missing from the box, without any proof how they disappeared.

[Milligan's Appeal.]

Although, as a general rule, this court will not re-examine questions of fact found by an auditor and confirmed by the court below, there are exceptions, and the court will not permit injustice to be done if it appears that an auditor's findings of fact or inferences from facts are unsupported by evidence: Speakman's Appeal, 21 P. F. Smith 25; Phillips's Appeal, 18 Id. 130; Moyer's Appeal, 27 Id. 482; Hindman's Appeal, 5 W. N. C. 347; Glendon Iron Co. v. Uhler, 25 P. F. Smith 467. The court below, while confirming the report, expressed such hesitation as to deprive its action of corroborative weight. The finding practically is, that Miss Milligan stole the bonds. There is no evidence to overcome a presumption of innocence, but the auditor found the fact upon circumstantial evidence which would give rise to a mere suspicion.

*W. S. Kirkpatrick*, for the appellee.—The finding of an auditor on questions of fact confirmed by the court will not be reversed on error, except for flagrant mistake, such as would be sufficient to set aside a verdict of a jury: Mengas's Appeal, 7 Harris 221; Speakman's Appeal 21 P. F. Smith 25; Whiteside's Appeal, 11 Harris 114; Yoke's Appeal, 5 P. F. Smith 122. Even were this court to consider the entire evidence *de novo*, though without the advantage of seeing and hearing the witnesses, we contend the same conclusion must be reached. If Mrs. Dawes had sold or given away the bonds, Miss Milligan, who was in constant attendance on her, would have known it. If a thief had stolen them, he would have taken all. The appellant really had charge of the securities from the time they were returned from the bank, and she was bound to produce them or account for them.

Mr. Justice PAXSON delivered the opinion of the court, May 2d 1881.

We are called upon in this case to review the rulings of the auditor and court below upon questions of fact. The principal matter of contention was the surcharge of the accountant with $1500 of United States bonds and with the coupons and interest thereon. These bonds were shown to have belonged to, and to have been in the possession of the testatrix prior to her death. The auditor, upon what he regarded sufficient evidence, surcharged the accountant with said bonds, as will appear by the following extract from his report: " Upon the whole testimony in the case, the conduct of the accountant, and the circumstantial proof adduced before the auditor, it is a moral certainty that the accountant either has these bonds or their proceeds, and under all the facts in this case, your auditor is clearly of that opinion. and accordingly so finds." The learned judge of the Orphans' Court sustained this ruling, yet it is evident he felt the strain of this branch of the case when he said, " While we are of opinion that the finding of the

[Milligan's Appeal.]

auditor is fairly sustained by the evidence, we are free to say that the circumstances are not very strong, and are of such a character as might fail to produce conviction in other minds."

There was no direct evidence before the auditor that the accountant had either the bonds or the proceeds. The conclusion to which the auditor arrived was based wholly upon circumstantial evidence. It is not a question whether he has found the facts correctly, but whether his inferences from facts, which in the main are not disputed, were accurately drawn.

Much that was said about the accountant being the agent of the testatrix may be dismissed with the single remark that she was not liable to account *qua* agent. She had no such possession of the bonds as agent as would render her liable for their non-production. As a matter of fact and as a matter of law, the bonds were in the possession of the testatrix down to the time of her death. Nor was the accountant her agent in the sense of involving liability. She was the servant and nurse of the testatrix, and did what she was directed to do. Sometimes it was to collect a coupon, at others to nurse her mistress and attend to household duties.

The only ground upon which this surcharge can be sustained is that the accountant embezzled or stole the bonds. This is a serious charge. It ought not to be made lightly, nor without clear evidence to sustain it. When a person is charged with crime it matters little what the form of the charge may be or on which side of the court. It is true the result is different, but the difference is only in degree. It may be more agreeable to be branded as a thief in the Orphans' Court or Common Pleas than in the Quarter Sessions. Wherever the charge is made, its gravity requires a careful consideration of the evidence upon which it is founded.

We have examined the auditor's report, and all the testimony in the case with care, and are of opinion that the facts and circumstances from which the auditor draws his opinion are too weak and inconclusive to justify his inferences. Beyond the admitted fact of the opportunity to purloin the bonds, there is not a scintilla of proof that the accountant took them. And the presumption, if there be one, arising from the mere opportunity is weakened, if not destroyed, by the fact that others had opportunities of stealing the bonds, and the testatrix of giving them away or otherwise disposing of them.

It appears reasonably certain that, in February 1869, the testatrix had $4000 in United States bonds, which were kept in a tin box. At that time they were exhibited by the accountant to counsel, under circumstances not material to narrate. We have no trace of them subsequently until some time in 1872, when Mary R. Dodd testifies that the accountant showed them to her at the house of the testatrix, and informed her that there were $1700 of them. The witness saw the bonds, but did not examine them, and had no

knowledge of the amount beyond what the accountant told her. The testatrix died during that year, and after her death the accountant, who was her executrix, produced $1700 of the bonds as all that there were remaining. When asked what had become of the residue, she accounted for $300 as having been used to pay a subscription to a church. This was shown to have been correct, and was allowed. She further claimed the testatrix had given her a $500 bond for her services as nurse, which the evidence shows were faithful, laborious and of long continuance. This was allowed. The whereabouts of the balance of the bonds she did not attempt to explain. There was still a deficiency of $1500, and with this the auditor surcharged her.

Conceding there to be circumstances of suspicion surrounding the case, there is not enough to sustain the verdict of a jury against the accountant on either the civil or criminal side of the court. It would be dangerous to infer guilt from the mere opportunity to commit a crime.

The first, second and third assignments of error are sustained.

We are unable to see any serious error in the remaining assignments. The principal one is to the refusal of the court to allow the accountant commissions. After reflection, we have concluded not to disturb this ruling. While we have relieved the accountant from the surcharge of the bonds, there is yet much in her conduct in the management of this estate that does not meet our approval. The ruling of the court below upon this point was not based exclusively upon the bonds. There were other matters, such as the conversion of the bank stocks to her own use, the attempt to buy a portion of the real estate at her own sale, and the admitted use of the trust-funds. These matters, coupled with her general conduct in her dealings with the estate, are sufficient to prevent our disturbing the ruling of the court below upon the question of commissions.

> The decree is reversed at the cost of the appellees, and it ordered that distribution be made in accordance with the foregoing views.