## ESTATES OF C. SPATH ET AL., MINORS.

APPEAL BY C. WOOMER ET AL. FROM THE ORPHANS' COURT OF
NORTHUMBERLAND COUNTY.

Argued May 27, 1891—Decided October 5, 1891.

1. Though a guardian, on account of his management of his wards' estates, may be deprived of all commissions thereon, yet where, by reason of the mental derangement of their mother, his wards required of him more than ordinary personal care and attention, an allowance to the guardian as compensation therefor may properly be awarded.

2. A guardian, who, after unavailing efforts for a year to loan out his wards' moneys, makes use of the same in his own business, and accounts for the principal with full interest, whilst so in use, such accounting, in the absence of proof that profits were made, or of malfeasance, negligence or delinquency, must be taken as the full measure of liability.

(a) A surety on a guardian's bonds became such after the insolvency of the guardian and of his original surety, and upon the agreement, made with the mother of the wards and their counsel, under the sanction of the court, that he was not to be held liable thereon beyond the balance in favor of the wards shown by the account then filed:

3. Such agreement was binding upon the wards, though they were minors when it was entered into. At all events, they cannot have the benefit of the surety's obligation, and yet repudiate the conditions upon which it was assumed; and they must therefore claim against him, if at all, only upon the contract of suretyship as it was entered into.

4. The guardian being dead when exceptions to his accounts were pending, and the surety having the right to intervene for his own protection, there was no ground for refusing to determine, in the pending proceeding, the question as to the extent of the surety's liability; and the court having acquired jurisdiction, both parties were bound by its decree.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 401 January Term 1891, Sup. Ct.; court below, number and term not shown.

On May 31, 1888, Catharine Woomer, and Catharine Miller, children of Frederick Spath, deceased, both having become of age, filed exceptions to the several accounts of their guardian, J. W. Fryling, filed August 3, 1875, March 16, 1878, and April 7, 1888, respectively, the first two accounts having been filed during the exceptants' minority. Thereupon, on June 12, 1888, on motion the court appointed *Mr. C. B. Bitner* auditor, to pass upon the exceptions and re-state the accounts.

Exceptions to the report of the auditor having been argued, the court, BUCHER, P. J. 20th district, holding special term, on December 15, 1890, filed the following opinion:

The numerous papers and documents filed in this case, spinning out every minute item of controversy with a prolixity that is distressing, render it very difficult to discover the real contention; and facts which may temper the decision of the court are either overlooked or treated as immaterial. Looking back at the origin of the controversy we find:

Opinion of Court below.

1. That on the fourteenth of May, 1867, J. W. Fryling was appointed guardian of the four minor children of Frederick Spath, deceased, to wit, Mary, John Charles, Christiana and Catharine Spath, and gave a bond with Samuel Faust as surety; that said Faust died a number of years since, was insolvent, and no effort was ever made to charge either him or his estate with the said Fryling's deficiency as guardian as aforesaid; so that, as to the original surety, Faust, we may treat his liability as though never incurred, and we are brought to deal with the present surety, A. N. Brice, who appears upon the scene on the thirteenth of March, 1878, under circumstances herein next detailed.

2. The records show that the guardian, John W. Fryling, stated an account of his trust which was confirmed nisi on the third day of August, 1875, excepted to November 8, 1875, and on February 14, 1876, the exceptions were withdrawn, and the account confirmed absolutely.   The account stood thus:

| | |
|---|---|
| Debit side    .    .    .    .    .    .    . | $3,536.00 |
| Credit "    .    .    .    .    .    .    . | 1,006.62 |
| | |
| Total balance due four wards,    .    . | $2,529.38 |

Shares of Christiana and Catharine .    .    . $1,264.69

Then said guardian filed a second account, March 16, 1878, as guardian of Christiana and Catharine, which was confirmed nisi June 5, 1878, and confirmed absolutely August 7, 1878. The balance found due said two wards by this account is $1,151.83.

3. At this point, a fact intervenes, which is of great significance in determining this controversy, and it is this: That upon the petition of said wards, Christiana and Catharine Spath, presented in court August 6, 1877, the court on March 18, 1878, ordered the guardian, J. W. Fryling, to give additional bonds in the sum of $800 each,—$1,600, and if he did so, the proceedings would be dismissed; that on that day, March 18, 1878, new bonds were given by said Fryling, and, although apparently dated March 13, 1878, they were doubtless prepared and not delivered until after the order of the court.   Thus the new security, A. N. Brice, appears upon the scene for the first time.   Faust, the original security, continued to live until the

first day of January, 1888, when he died, and the year following, 1889, his real estate was sold on a levari facias by the sheriff for $2,075, and it is not pretended that any part of the trust money could have been made out of his estate; and the question as presented by these proceedings would not be affected, so far as the new security, A. N. Brice, is concerned, as will hereafter appear.

4. This is also true, as proved by the testimony of L. H. Kase, Esq., and A. N. Brice himself, that the guardian, J. W. Fryling, was brought into court on an attachment, and that, pending the exceptions to said Fryling's accounts and upon the hearing of the rule to require new security, the matter of the balance of $1,151.83 and the exceptions and the insolvency of Fryling were discussed and commented on in open court, by the counsel on both sides; and the court believed and so expressed itself, that in consideration of A. N. Brice becoming security for Fryling, for the payment of the $1,151.83, found due on the accounts as stated, it was deemed wise to allow the court to dismiss the exceptions, confirm the accounts, and thus end the controversy; and this was done. Brice proves that, by reason of this settlement in open court that the balance should be $1,151.83, he upon this condition became the surety for Fryling; and, as proof of this, on the sixteenth day of March, 1878, he executed a declaration of trust reciting the facts as heretofore detailed, stating the balance in hands of Fryling as found in his two accounts, as $1,151.83, due to John and Mary Spath, of whom P. H. Moore was their present guardian, and how much of that remained unpaid, to wit, $705.83. So, that is hereby found as a fact, that Brice the present surety of Fryling became such upon the settlement and adjustment of the sum in open court at $1,151.83, as the balance due by Fryling to his two wards, Christiana and Catharine Spath, and with the distinct understanding that no more than this should be covered by the bonds. We find that all this was done in open court, with the consent and under the advice of the court, and was a family settlement consented to by all interested and representing the minors.

From all these facts we conclude that, whatever may be the real balance due from Fryling's estate to these two minors, Christiana Woomer and Catharine Miller, A. N. Brice, as surety,

is only bound to pay on the basis of $1,151.83, as of March 16, 1878; and a careful consideration of the auditor's report and calculations, convinces us, that his report is correct and fair, except, as to the surety A. N. Brice, the sum to be paid by him is less than is due from the estate of Fryling, and this is our calculation:

\*        \*        \*        \*        \*        \*        \*        \*

This sum of $885.62, A. N. Brice must pay and no more.

In reaching this calculation we are governed by the plainest principles of equity, that parties shall be bound according to the terms of their contract, and no greater burdens shall be imposed upon sureties than they have assumed, a proposition so natural and just that no authority in its support is needed. If it be said that the bond is the contract, we answer, truly so; nevertheless, in Pennsylvania, beginning with Miller v. Henderson, 10 S. & R. 290, down to Keough v. Leslie, 92 Pa. 424, it was always admissible to show by parol, in a suit against a surety, that he executed the bond under a declaration, either that no liability was to be incurred, or that the extent of his liability was limited. Besides, the bonds in this case are not contradicted; they are in the penalty of eight hundred dollars each, and the conditions are in the ordinary form. They are not official bonds.

But, while we reach this conclusion as to the surety, Brice, the liability is different as to J. W. Fryling's estate (he is deceased) to these wards. The findings of the learned auditor show that the true balance due from said deceased to his wards is the sum of $1,478.47, with interest from December 19, 1888, there being due to Catharine Miller $739.23, to Christiana Woomer a like sum of $739.23, with interest from December 19, 1888, which we will decree to be paid. Of this sum the surety, Brice, shall only pay $885.62; that is, one half of that sum to each ward.

In doing this, it will be remembered that we have jurisdiction in this proceeding over the surety, A. N. Brice, because he by his petition became a party to the same and was admitted to defend precisely as if sued upon his bonds; and he must now submit to a decree for the payment of what he is found to owe, thus avoiding circuitous litigation (which our daily experience tells us is expensive and useless), and accomplishing in

one proceeding what might have required two different forms of litigation, and a postponement of the day of payment. He cannot complain, because he sought this investigation and petitioned the court to become a party, which his Honor, Judge Rockefeller, properly permitted. The result of all is, we will decree. We have fully considered all the exceptions, but they are so numerous and repeat themselves so constantly and uselessly that it would be idle and unprofitable as well, to deal with them seriatim. Hence we have disposed of them in this general way.

—A decree was then entered ordering that the estate of J. W. Fryling, deceased, should pay to Catharine Miller $723.23, with interest from December 19, 1888, and a like sum, with interest, to Christiana Woomer ; that A. N. Brice, surety, should pay or cause to be paid to Catharine Miller the sum of $442.81, and a like sum to Christiana Woomer, unless the estate of said J. W. Fryling, deceased, should pay the said sums ; and that upon such payment, the said A. N. Brice should be discharged from all liability on his two bonds dated March 13, 1878 ; with a direction for the payment of costs. Thereupon, the exceptants took this appeal, specifying that the court erred :

1. In sustaining the auditor, by allowing J. W. Fryling, guardian, the sum of $276.82, as commissions and compensation, charged in his several accounts and allowed by the auditor.

2. In sustaining the auditor, by refusing to charge the guardian with interest on the funds in his hands for over one year after the same came into his hands, he having used the money in his business.

3. In deciding and determining, in these proceedings on the exceptions to the guardian's accounts, to what extent or for what amount of said balance, found in the hands of the accountant, A. N. Brice, one of the sureties for the said guardian, is liable on his bonds, and in not affirming the opinion and conclusions of the auditor as expressed on this point in his report.

4. In finding and determining that A. N. Brice made himself liable, by going on the bonds of J. W. Fryling, guardian, as surety, to the extent and for the amount only of $1,151.83, the balance that appeared to be in the hands of the guardian, when

he became such surety, as shown by his accounts filed March 16, 1878, and in not affirming the opinion and conclusions of the auditor as expressed on this point in his report.

5. In allowing the credits of $990.27 and $151.32, in ascertaining the amount for which the said A. N. Brice was liable on the fifteenth day of November, 1890, on the basis of liability on his bonds, as decided by the court, and in not confirming the statements of credits prepared and submitted by the auditor.

*Mr. M. L. Snyder*, for the appellants.

Upon the first assignment, counsel cited: Lamb's App., 58 Pa. 144; Montgomery's App., 86 Pa. 235; Say v. Barnes, 4 S. & R. 116; McCahan's App., 7 Pa. 62; Seguin's App., 103 Pa. 144; Norris's App., 71 Pa. 114; Stehman's App., 5 Pa. 417; Robinett's App., 36 Pa. 190; Stearly's App., 38 Pa. 530; Berryhill's App., 35 Pa. 248; Witman's App., 28 Pa. 378; Douglas's App., 82 Pa. 169; Walls' App., 104 Pa. 14; Albert's App., 128 Pa. 619.   Upon the second assignment: Worrell's App., 23 Pa. 50; Huffer's App., 2 Gr. 343; Hughes' App., 53 Pa. 503; Pennypacker's App., 41 Pa. 500; Walls' App., 104 Pa. 17. Upon the third assignment: Yoder's App., 45 Pa. 394; Gossner's Est., 6 Wh. 401; Wither's App., 16 Pa. 151; Scott on Intest. Law, § 3.   Upon the fourth assignment: Commonwealth v. Cox, 36 Pa. 442; Kirkpatrick v. McDonald, 11 Pa. 393.

*Mr. George B. Reimensnyder* and *Mr. C. M. Clement* (with them *Mr. S. P. Wolverton*), for the appellee.

Counsel cited: (1) McElhenny's App., 46 Pa. 347; Seguin's App., 103 Pa. 139; Harland's Accts., 5 R. 323.   (2) Baker v. Richards, 8 S. & R. 12; Bachman's Est., 1 Clark 253. (3) Bishop's App., 26 Pa. 470.   (4) Miller v. Henderson, 10 S. & R. 290; Keough v. Leslie, 92 Pa. 424.

OPINION, MR. JUSTICE GREEN:

First assignment of error: The auditor distinctly allowed the item of $276.82, not as commissions or compensation for the care of the money of the wards, but for the personal services of the guardian in caring for the wards during the whole period of the trust.   As this extended from May, 1867, to 1884

as to one of the wards, and to 1887 for the other, and there were two wards instead of one, the amount allowed would represent an annual sum of about fifteen dollars for the two, or seven dollars and a half for each. The auditor especially found that the mother of the wards was subject to frequent attacks of mental derangement, which required more than ordinary care and attention from the guardian. We regard the amount allowed as exceedingly moderate, and affirm the auditor's allowance without hesitation.

The guardian was deprived of all compensation for the care of the money of the wards, and hence authorities on that subject are not pertinent. The guardian used the money of the wards in his own business, but the auditor finds that this was not until after his efforts to loan it out were unavailing. He charged himself with full interest on the money, and, as there is neither allegation nor proof of any profits made, we think that is the full measure of his liability. There is no proof in the case of malfeasance, supine negligence, or gross delinquency, and there is no reason for imposing harsh penalties upon the guardian. The first assignment of error is not sustained.

Second assignment: The auditor found that the bulk of the money was received on March 11, 1868; that the guardian endeavored to invest it during the first year without success, and did not commence using it in his business until March, 1869; and therefore, did not charge him with interest during that year. This is in accordance with the well-established law, and we see no reason to interfere with the action of the auditor in this respect. This assignment is not sustained.

Third and fourth assignments: Both the auditor and the court below found that the bonds given by A. N. Brice were not given until after the insolvency of the guardian and his original surety had occurred, and when a proceeding for an attachment against the guardian was pending, for not paying over the money in his hands; that Brice agreed to become surety for the payment of the amount ascertained to be in the hands of the guardian at that time, March 16, 1878, according to the accounts then filed, and thereupon, the whole matter having been agreed upon, in the presence of the court, by the mother and counsel for the wards and by Brice, and having the sanction of the court, a decree was made dismissing the

proceeding upon Brice filing a bond for eight hundred dollars to each ward; that Brice entered into the bonds in question upon the faith of this agreement and decree, and that the total amount for which he became responsible was $1,151.83, as ascertained by the settlement and adjustment of the guardian's accounts then filed. The court below further finds, and upon sufficient testimony, as we think, that Brice became surety for the specific sum of $1,151.83 to be paid to the appellants, "with the distinct understanding that no more than this should be covered by the bonds;" and "that all this was done in open court, with the consent and under the advice of the court, and was a family settlement consented to by all interested and representing the minors."

Objection is made by the appellants that this agreement and settlement is not binding on them, because they were then minors. But that contention overlooks the question whether, if it is not binding on the wards and is now repudiated by them, it is binding on the surety. They had no claim upon Brice, at the time he consented to become surety upon the special terms stated. They must, therefore, claim against him, if at all, only upon the contract as he made it. That is the only contract by which he consented to be bound, and therefore it is the only contract which can be enforced against him. Nothing can be clearer than that one who claims the benefit of a particular contract must take it as it is or not at all. He cannot take its benefits and repudiate its conditions. This rule is especially applicable in the case of sureties. In Keough v. Leslie, 92 Pa. 424, we said: " A party seeking to enforce a contract made by his agent is bound by his declarations made at the time, although he exceeded his authority: Caley v. Railroad Co., 30 P. F. Smith 363. If he would have the benefit of the bargain, he must adopt it as his agent made it." There is no question here as to altering the terms of a written contract by parol, but of showing the conditions upon which the party was induced to execute it.

Nor do we see any sufficient reason for refusing to entertain the question of Brice's liability in the present proceeding. His bond was given in the same proceeding of which this is a part. It was given in the same court, and upon the faith of an agreement made in that court, and a decree following that agree-

ment. The surety of a trustee has a right to intervene for his own protection in such a case, especially where it is his own personal obligation that is in question. He came into the Orphans' Court, and submitted to its jurisdiction and is bound by its decree, and we know of no reason why the appellants should not be equally bound. Both parties have been fully heard upon their respective contentions, and the Orphans' Court, having jurisdiction, can administer every right that could be assured in a common-law action on the bond with much delay and expense to the parties. The third and fourth assignments are not sustained.

Fifth assignment: There is so much confusion in the figures which ought to enter into the final adjustment, so far as it affects Mr. Brice, that we cannot make the proper computations here, but will indicate what seems to us to be the correct method of calculation:

The balance of $1,151.83, which must be assumed as the basis of Brice's liability, included credits of $87.50 paid for support of wards from June 17, 1876, to March 16, 1878, and interest on the same, $3.80. It also included three items, $5, $7.50, and $70.82, which are again credited by the court below in their final adjustment. The whole amount of payments from June 17, 1870, to June 15, 1884, for the support of the wards, is found by the auditor to be $715, and this is allowed by the court. Plainly, this amount should have been less by $87.50 and $3.80, already credited in ascertaining the balance of $1,151.83. The other three items above referred to amount to $83.32, and this sum, also, should be stricken out of the credits of $151.32, allowed by the court. The court charged the accountant interest on the whole $1,151.83 from March 16, 1875, to November 16, 1890, allowing no deductions on the principal for payments made from time to time. If the interest accruing exceeded the payments, this would have been right; but a correct computation shows that the interest from March 16, 1878, to June 15, 1884, on $1,151.83, amounts to only $415.51, and therefore was considerably less than the disbursements during the same period. The correct method of stating the account, therefore, during that period, would be to give credit for interest on each payment down to June 15, 1884, when the payments ceased. The dates of these payments are not before us, and therefore we cannot

make the computation. On the balance thus ascertained, on June 15, 1884, interest should be charged to the time of the final decree, and then credit should be given for the items of $10, $8, and $50,—$68, allowed by the court below; and for the aggregate sum thus resulting, if not in excess of $1,151.83, a decree should be entered against Brice. If the costs are paid by Brice, $146.50, he should have credit on the amount to be paid to the wards to that extent. With these corrections, the decree of the court below is affirmed.

> The decree of the Orphans' Court is affirmed, subject to corrections as indicated in the foregoing opinion; and the record is remitted, with instructions to enter the final decree in accordance therewith, the costs of this appeal to be paid by the appellants.