Anderton et al. *v.* Patterson, Appellant.

122

Argued September 28, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles McC. Barrickman,* with him *Norman S. Faulk* and *Buchanan, Wallover & Barrickman,* for appellant.

*Leonard L. Ewing,* with him *Reed, Ewing & Ray,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, November 14, 1949:

This is an action in equity against an *inter vivos* trustee for an injunction, the appointment of a receiver, an accounting, a surcharge and a conveyance. Appellant, the trustee, has appealed from the decree of the court.

John J. Patterson executed and delivered to his son, John Q. Patterson (appellant), a deed dated April 10, 1930, conveying a fee simple title to real estate therein described. The premises consist of a lot of ground in the City of Beaver Falls whereon is erected a three story brick building and other smaller structures. Simultaneously with the execution of the deed, the father and son executed a written agreement, whereunder appellant was constituted an *inter vivos* trustee with the following duties: (a) to collect debts and credits due the father (b) to secure a mortgage loan on the premises for $15,000, or such sum as may be necessary (c) to rent the premises to the best advantage (d) to make changes, improvements and repairs (e) to sell the premises (f) to pay taxes, upkeep, repairs from debt collections and mortgage loans and (g) to pay the father (grantor) $125 a month for life. Upon the death of the father the son (trustee) was to account to his sisters, Nellie and Pearl, for rents and profits derived from the premises and "pay, from time to time, to [the sisters], each the one-third part of the net income derived from said premises after the payment of taxes, repairs, upkeep and such other expenses as may be by him incurred."

The findings of fact, sufficiently supported, establish that the father died intestate February 5, 1945. His heirs were the son and two daughters. It does not appear whether there is an administrator of his estate. No accounting of any character has ever been made by the trustee. The property has not been sold. Prior to the father's death the son used and occupied the prem-

ises for his own business. He rented part of the premises to others. The Chancellor found that the reasonable rental value of the premises was $300 per month. There was offered in evidence a statement of a certified public accountant purporting to be a statement for the period February 6, 1945 (day after death of father) to May 31, 1948 (nine days before trial on June 9, 1948) of the cost of improvements, alterations and repairs, taxes, insurance, mortgage principal reduction and mortgage interest payments on the property.

The court decreed that appellant pay to each sister $1,108.60, the amount of net rents accrued from February 5, 1945 (date of father's death) until March 5, 1949 (decree *nisi* was March 7, 1949); that appellant be enjoined from conveying or encumbering the real estate; that the appellant be removed as trustee and that a substituted trustee (miscalled a receiver) be appointed to take possession of the property in order to manage, control and administer it.

Under the court's opinion the accounting was limited to a period commencing from the date of *death of settlor* to the approximate date of the decree *nisi*. The court refused to permit appellant to account from the date of the inception of the trust to the date of the settlor's death. Accounting for that period was deferred until the "receiver" sold the real estate.

We are unable to agree with the method of accounting directed by the learned Chancellor.

We construe the agreement between the father and son to be in the nature of a declaration of trust constituting the son a trustee for his father, *for the life of the father,* and after the father's death, for his sisters and himself. The fact that the son was to pay his father $125 per month for life, did not imply that the son should keep all surplus, if any, for himself. No such implication can fairly be drawn from the terms of that instrument.

After the father's death the trustee was directed to collect the rents, issues and profits, render an accounting and pay one-third of the net income to each of his two sisters. The trustee was directed to sell the real estate. If sold *after* the death of the father the trustee was to render an accounting to the two sisters and to pay to each one-third of *"the net income remaining in his possession"*. Here again, the only inference to be drawn from these words is that "net income remaining" was intended to mean "proceeds of sale". Those words were obviously used in the sense of "net intake". But even if the words be regarded literally the same result follows. While there was a gift of net income, there was no *express* gift of corpus. As the two sisters and the brother (trustee) were the only heirs because of the intestacy of the father, the corpus would be divided and paid to them in equal third shares.

We approve the decree removing appellant as trustee. He has used and occupied the premises for his own purposes for sometime prior to his father's death in 1945 without paying any rent. He has paid no income to his sisters and has made no accounting to anyone until this litigation, and then only a partial and incomplete accounting. He also claims to be a creditor of the estate. The real estate must be sold. His personal interest, while operating his business on the premises, conflicts with his duties as trustee. Such considerations interfere with a trustee's duty of loyalty: *Milligan's Appeal*, 97 Pa. 525; *Spath's Estate*, 144 Pa. 383, 22 A. 749; Restatement, Trusts, §170, Comment L.

The court of common pleas has jurisdiction over this *inter vivos* trust: *Schwartz v. Schwartz*, 316 Pa. 318, 175 A. 386; *Roseberry's Estate*, 317 Pa. 45, 176 A. 216; *Thompson, Trustee, et al. v. FitzGerald*, 329 Pa. 497, 198 A. 58. Under the Act of June 14, 1836, P. L. 628, 20 PS, 2872, the court possessed power to protect and preserve a trust estate by the discharge of a trustee and

the appointment of a substituted trustee: *Rowland v. Moore,* 239 Pa. 513, 518, 86 A. 1064.

Appellant, the trustee, should be required to account from the date of the inception of the trust, April 10, 1930, until the date of his removal as trustee. Until the date of his father's death, he should be charged with rent at a just rate for the period he occupied the premises, which presumptively would be at $300 per month —found by the court to be a fair rental *after* the father's death. He should also be charged with any other income which he received from the premises, not covered by his own use and occupation. He should be given credit for all expenditures properly made for or on account of the care and maintenance of the property, including taxes, repairs, interest and payments on account of the principal of mortgage or other indebtedness. In addition, he should receive credit for all payments made to his father and for any expenditures which he properly made out of his own funds. An administrator of the father's estate should be made a party to these proceedings. The record reveals that appellant may be indebted to that estate and therefore the interest of creditors and distributees may be involved.

For the period following the date of the death of the father, there should be a full detailed accounting— with debits and credits as above indicated. If any balance remains it should be distributed. Should it appear that appellant has a just claim for commissions and administration expenses above the amount of the income, the amount thereof shall be determined and paid out of the proceeds of sale of the real estate when sold by the substituted trustee. And should there be a surcharge against the trustee in excess of his distributive share of *income,* adjustment may await a final accounting and distribution.

Apparently the court, on its own motion and selection, on removing the trustee, appointed what it termed a "receiver". While no objection to this has been made by appellees, when appointing substituted trustees, the court should select them from the nominees of the parties in interest unless those proposed are not proper persons to be entrusted with the care of the estate: *McCaskey's Estate,* 293 Pa. 497, 501, 143 A. 209; 307 Pa. 172, 176, 160 A. 707.

There should be a decree formally removing the trustee and appointing a successor, and an accounting should be had as herein indicated. An auditor may be appointed, to audit the account, if the court deems it necessary.

The decree is set aside and the record is remitted for reconsideration consistent with this opinion. Costs to abide the event.