# McCaskey's Estate.

*Trusts and trustees—Appointment—Substituted trustees—Notice to parties—Choice of names—Discretion.*

1. The law looks askance at anything which savors of uncontrollable discretion, and does not decide in favor of the existence thereof unless no other conclusion is reasonably possible. It acts and ever should act so as to reduce the opportunity for favoritism to a minimum.

2. When substituted trustees are to be appointed, all the present and prospective parties in interest should be duly notified, in order that each of them may present to the court the names of those whom he or she desires to administer the trust.

3. From the names thus suggested, if there are sufficient for the purpose, the court should appoint as trustees those who are in its judgment thoroughly competent to administer the trust.

4. Such appointees should be of those persons or institutions that are not unfriendly to the life tenants, yet will not permit anything to interfere with their duty to preserve the principal intact for the remaindermen; but no one should be appointed whom any of the parties in interest not unreasonably views with doubt and suspicion.

5. The court is not obliged to place on record its reasons for accepting certain of the nominees appearing on the lists presented by the parties, and rejecting others thereon; necessarily a large discretion must be vested in it, for only thus can there be a wise, independent determination as to the qualifications of those proposed for appointment.

*Wills—Perpetuities—Legacies—Vesting—Intention—Dominant purpose.*

6. The rule against perpetuities does not apply to gifts, whether vested or contingent, if they must take effect within a life or lives in being at the death of testator and twenty-one years thereafter, if also their payment is fixed with reference to such life or lives in being. But gifts which are made without reference to

any life or lives in being at the death of testator, must vest within twenty-one years after his death.

7. Where precedent gifts do not transgress the rule against perpetuities, and no right of distribution is alleged to presently exist in favor of those interested in remainder, the court will not consider the question of the validity of the latter gifts, unless it appears that the dominant purpose of the will was to tie up the entire estate beyond the time allowed by law.

8. Testator's dominant purpose must be determined from a consideration of his intention as expressed in the will, irrespective of abstruse questions of law which will have to be considered when distribution is to be made; but these are of importance when determining whether or not testator's plan of distribution will be so emasculated, in vital respects, as to render it reasonably certain that he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside.

Argued May 9, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 40, 41, 57, 58 and 59, March T., 1928, by W. Rhodes McCaskey et al., from decree of O. C. Allegheny Co., Dec. T., 1925, No. 378, appointing trustee in estate of John G. McCaskey, deceased. Reversed.

Petition for appointment of substituted trustees. Before MILLER, P. J. MITCHELL, J., TRIMBLE, J., dissenting.

The opinion of the Supreme Court states the facts.

Decree entered appointing substituted trustees other than those suggested by the petitioners. Petitioners appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Owen J. Roberts,* of *Roberts & Montgomery,* with him *George H. Calvert,* of *Calvert, Thompson & Berger,* for appellants.—The court should not have ignored the nominations made by the beneficiaries for substituted testamentary trustees: Lafferty's Est., 198 Pa. 433; Glaser's Est., 29 Pa. C. C. R. 605.

The appointment cannot be sustained when interested parties were not represented and had no notice: Glaser's Est., 29 Pa. C. C. R. 605.

The words of gift are contained in the direction to pay; the gifts of principal are therefore contingent upon the donee being alive at that time; most are too remote: Evans Est., 264 Pa. 357; Rosengarten v. Ashton, 228 Pa. 389; Alburger's Est., 274 Pa. 15; Frasier v. Gas & Water Co., 249 Pa. 570.

All shares are held under spendthrift trust with an express prohibition against the alienation of either principal or income and with power in the trustees to withhold income; this makes all the gifts contingent, and most of them too remote: Morgan's Est., 223 Pa. 228; Horwitz v. Norris, 49 Pa. 213; Huber's App., 80 Pa. 348; Walter's Est., 223 Pa. 598; Neel's Est., 252 Pa. 394; Shallcross's Est., 200 Pa. 122.

In many aspects the testator has used gross terms of years instead of lives in being for his limitations, and has thus rendered them void: Linck v. Plankenhorn, 286 Pa. 319.

The rule is well settled in Pennsylvania that where the intention of the testator is to tie up his estate for too remote a period, and this is evidenced by a general disregard of the rule, the whole will be stricken down as being one entire scheme to violate the rule: Johnston's Est., 185 Pa. 179; Kountz's Est., 213 Pa. 390; Crolius v. Kramer, 279 Pa. 275.

*George E. Alter,* of *Alter, Wright & Barron,* for trustees and trustee ad litem, appellees, and *B. J. Jarrett,* of *McCook & Jarrett,* for testamentary guardian, appellee.—The selection of a well-balanced board of capable trustees, who could give adequate attention to the trusts, was a very important duty resting on the court, not only on account of the large size of the trust fund, but also on account of the unusual discretionary responsi-

bilities with which the trustees are charged by the testator.

The trust as planned by the testator is valid, involving no violation of the rule against perpetuities: Campbell's Est., 202 Pa. 459; Haldeman v. Haldeman, 40 Pa. 20.

The income is payable to the issue immediately on the death of the parent; this causes a vesting of the corpus at that time: Provenchere's App., 67 Pa. 463; Coggin's App., 124 Pa. 10; Reed's App., 118 Pa. 215; Brown's Est., 289 Pa. 101; Siddall's Est., 180 Pa. 127; McKeown's Est., 259 Pa. 216.

OPINION BY MR. JUSTICE SIMPSON, June 30, 1928:

But two of the questions argued on this appeal need be considered at the present time: (1) Did the court below err in its selection of those whom it appointed as substituted trustees under decedent's will? and (2) Did the life estates to decedent's children, whether taken alone or in conjunction with the other gifts in the will, violate the rule against perpetuities? As to the first the court below erred; as to the second it was correct in deciding that they did not.

By testator's will he gave all his estate to four named persons (one of whom was also made executor), in trust, as to the great body of it, for his five children and their descendants. His nominees accepted the offices specified, but subsequently one of the trustees resigned, and the rest of them, acting under a power contained in the will, appointed another in his place. The trustee who had resigned then sought and obtained from the executor, with the consent of the trustees, an option, without paying any consideration for it, to purchase the estate's interest in certain oil properties in Oklahoma, for the sum of $1,800,000. Subsequently, upon payment of $25,000, he obtained an extension of the option; before its expiration he paid the amount agreed upon and received an assignment of the interest.

The executor then filed his account, charging himself, inter alia, with the $1,800,000. Objection was made that this sum was inadequate, and, partly as the result of an investigation instituted by the court, and partly because of one conducted on behalf of testator's two adult sons, the purchaser paid $1,243,343 additional. Because of this, the court below indicated that "the trust would be best administered by other people" than the existing trustees, whereupon they tendered their resignations which were accepted.

The adult sons then presented a petition to the court, which was joined in by the testamentary guardian for the three minor children, asking the appointment of four new trustees, and later the sons suggested the names of six representative professional and business men of Pittsburgh, from whom selection might be made. Regarding them, the court in banc said "there is no evidence or implication of disqualification or lack of ability or integrity on the part of any of the names suggested." No others were proposed by the representatives of the remaining actual or possible beneficiaries; but one of the latter, who was a minor in esse, at that time had no one to represent him. The auditing judge did not appoint any of those named, but, on the contrary, selected a bank, of which the executor who had also been trustee was president, and three individuals. To their appointment the adult sons excepted, the majority of the court in banc sustained the auditing judge, and each of the present appeals was taken by or on behalf of one of the five children.

It is admitted that for many years it had been the unbroken practice in Allegheny County, and, so far as we are aware, in every other county of the Commonwealth, for the orphans' court, when appointing substituted trustees, to select them from the nominees of the parties in interest, unless those proposed were not proper persons to be entrusted with the care of the estate. This is a wise practice, especially where, as here,

the discharge of existing trustees is not also sought, though even in that event a removal will be decreed if the conduct of the trustees "works disadvantage or great discomfort" to the beneficiaries: Marsden's Est., 166 Pa. 213; Neafie's Est., 199 Pa. 307; Myers's Est., 205 Pa. 413.

The majority of the court below (two in number, one of them being the judge who made the appointments) say, however: "Granted, that it is a custom of this court and is good practice to consider nominations for vacancies made by parties in interest; yet no court is bound thereby, by legislative mandate or otherwise, except possibly under [section 53 (a)] sub-division 9 of the Fiduciaries Act of 1917, and that relates wholly to removals of former fiduciaries and not to resignations. . . . . . The trial judge's discretion is paramount, irrespective of the nomination of the parties or any of them; . . . . . neither custom nor practice can control his discretion." To this the dissenting judge in effect says: The law wisely looks askance at uncontrollable discretion, and does not decide in favor of the existence thereof, unless no other conclusion is reasonably possible. It acts, and ever should act, so as to reduce the opportunity for favoritism to a minimum. With this statement of the law, and its application to the present situation, we agree for the further reasons which we will now state.

Section 53 of the Fiduciaries Act of June 7, 1917, P. L. 447, 518, which primarily deals with the removal of existing trustees, contains two provisions relating to the appointment of new ones: (1) where the previous trustees were removed for the reasons specified in Marsden's, Neafie's and Myers's Estates, supra, when section 53 (a) subclause 9, referred to in the majority opinion, applies, (see Report of Commission appointed to Codify and Revise the Law of Decedent's Estates, page 231); and (2) in emergency cases, where it is necessary to forthwith remove the old trustees and appoint new ones,

which situation is governed by section 53 (c). These two exceptions, which, for special reasons, link up the subsequent appointment with the immediately preceding removal, are inapplicable here.

Aside from those two instances, the appointment of new trustees is provided for only in section 56, P. L. 523. That section specifies in clause (a) that if one of several trustees "shall die, renounce, resign, be dismissed from or refuse to act in the said trust," leaving others "continuing therein, it shall be lawful for the orphans' court having jurisdiction of the accounts of such...... trustees, on the application of any party in interest, and with the consent of such continuing......trustees, with notice to all persons interested, so far as such notice can reasonably be given, to appoint a trustee or trustees" to fill the vacancy or vacancies. Clause (b) of this section uses the same language, except that the words relative to the continuing trustees are omitted, because this clause applies only where none are remaining in office.

It will be noticed that section 56 does not antagonize the wise practice above referred to, which requires the court to appoint from those named by the parties in interest, if among them are persons fully qualified to administer the trust. On the contrary, the section seems to recognize this practice, for it provides that the application for the appointment must be by a party in interest, and that notice must be given to all who are interested "so far as such notice can reasonably be given." We have said, as the legislature is presumed to know, that the tenants for life are "entitled to have [their] interests considered from a friendly and beneficial point of view" (Myers's Est., supra, 414), and the remaindermen are justified in asking for trustees who will not "rack the property for present income at the expense of the inheritance": Ibid. 415. In emergency cases (section 53, c) an appointment may be made "on the ex parte petition of any creditor or party inter-

ested," without requiring such notice to be given. Contrasting these situations with one like the present, it should not be difficult to determine what was the probable reason for inserting the statutory requirement that, in the latter, actual notice must be given to all parties interested. A reasonable conclusion is that in such cases it was intended "all parties interested" should at least be heard on the question of the appointments to be made. It can hardly be that the provision was simply intended to give them an opportunity to object to those whom the judge proposes to appoint, for if, as the majority state, the court's discretion is not controllable, it may designate them, as was done in the present instance, without previously disclosing who they are to be; and if names are proposed by the court the parties in interest would probably hesitate to object to those who are thus foreordained to be their trustees, unless they can prove not merely incompatability, but, at least, gross incompetency. They ought not to be put in such a position. Nor was the requirement of notice presumably adopted merely that the court might be advised whom the parties in interest desired, for no statute was needed for such a purpose, and they would naturally be loath to suggest as trustees those who may be turned down without rhyme or reason. It may be said that no self-respecting judge will do this, but a system is bad if one who seeks to control appointments for personal reasons may so act.

The law evidently contemplates that the interests of the estate and the rights of the parties shall be the subjects of first concern, as in our prior opinions we said they should be, and that no outside personal preference should be allowed to interfere therewith. The dissenting opinion well says: "The court's duty is to supervise the preservation and distribution of the trust property. It would be difficult to calculate how many children have appeared before this court in the half century of its existence who were above the age of four-

teen years [as the present minors are] and selected their own guardians under the supervision of the court. The common law of England gave young people the right and it is now statutory. Not only this; by statute a preference is given to members of families in the grant of letters, and the whole trend of legislation and judicial decision has been to recognize the members of the family and, in so far as it is possible, to let them manage their own affairs. These children were willing to accept the terms of their father's will when they submitted their choice of trustees. No reason has been given for not appointing them, and I know of none."

It must not be supposed that what we have said reflects upon the auditing judge or on the integrity of any of his appointees; or that some of the latter, if named by the parties in interest, may not be reappointed when the correct procedure is followed; or that the previous nominees of the sons, or any of them, must be appointed. What we decide is that the course pursued in making the present appointments was wrong. All the parties in interest, present and prospective, are entitled to suggest the names of those whom they prefer for trustees, and therefrom the court should select, if of opinion they are thoroughly fit, a sufficient number who are not unfriendly to the life tenants, and yet will not permit anything to interfere with their duty to preserve the principal intact for the benefit of the remaindermen. In making its selections and rejections from the lists presented by the parties in interest, the court is not obliged to place on record its reasons therefor; necessarily a large discretion must be vested in it, for not otherwise can there be a wise independent determination of the question as to the persons or institutions best qualified to care for the estate, for the benefit not of some but of all the interests concerned. Any other conclusion than that above stated would not only antagonize the unbroken practice referred to, but might also result in the appointment of a trustee whom

the judge believes to be personally competent, but whom the parties in interest not unreasonably view with doubt and suspicion. This, indeed, was the situation here, where the chief executive officer of a bank resigned because of actual or apparent negligence in the performance of his duties, and yet the bank itself was appointed as his successor. Under the cases above cited this was error, and to them may be added Lafferty's Est., 198 Pa. 433.

Coming then to the second point necessary to be decided at this time, we find testator places most of his estate in trust for certain specified purposes not necessary to be here recited, and then directs his trustees to pay "the net available income in equal monthly installments [upon spendthrift trusts] to my said children share and share alike," *beginning immediately on his death.* He then provides that the trustees may *temporarily* withhold any part of such income whenever necessary to "discourage over-indulgence and extravagance on the part of any of my children," and stipulates that each of his sons shall be given one-fourth of the principal of his share when he reaches thirty years of age, another when he reaches forty years of age, and still another when he reaches forty-five years of age; the income which each son is thereafter to receive is to be reduced proportionately, and after his death continued to his children until they receive the principal, at times and under circumstances not necessary to be here detailed. The daughters, whose shares are also directed to be held upon separate use trusts, are given the income for life, with remainder, as to it, to their children until the latter reach twenty-one years of age, when the principal is to be paid to them. A codicil authorizes the trustees, in case of need, to give a portion of the principal to the daughters.

The eighth paragraph of the will, upon which appellants especially dwell as showing that the rule against perpetuities has been offended, is as follows: "Should

any of my children die during the period of this trust leaving issue surviving them, the share of income or principal of the child or children dying, remaining unpaid, shall be paid to their respective issue at the times and in the manner and in the same estates as the parent would have taken had he or she not died. In case any of my children shall die as aforesaid without issue surviving them, the share of such deceased child or children shall likewise be paid to their respective brothers and sisters in equal shares but the shares of the brothers and sisters so falling to the surviving brothers and sisters or their issue, shall become part of and payable under the terms and provisions of, and on the estates set forth in, the trusts heretofore created for my children respectively and their issue."

In the view we take of the case, it is not necessary, at this time, to determine how far, if at all, this paragraph transgresses the rule against perpetuities, for since no power of appointment is given to the children, who are all still living, the gifts of income to them, upon spendthrift trusts, and the gifts of portions of the principal to the sons when they reach specified ages, and to the daughters in case of need, are all good, whether or not the gifts are vested or contingent. They are all given to those who were in being when testator died, and the rule only applies to contingent gifts which are to take effect beyond a life or lives in being and twenty-one years thereafter: Lilley's Est., 272 Pa. 143; Gageby's Est., 293 Pa. 109; Fenney's Est., 293 Pa. 273. If, in fixing the time of these payments, testator had simply adopted a term of years, without reference to any life in being, they would probably have been held void (Johnston's Est., 185 Pa. 179, 184; Linck v. Plankenhorn, 286 Pa. 319, 322); but here each and every of them is fixed with reference to, and is payable within the term of a life in being at testator's death, and hence none are objectionable. This being so, they should be treated accordingly, and the application of the rule to a status not

now existing should be determined, as in other matters, when it becomes necessary so to do and not before then, unless it appears that the dominant purpose of the will was to tie up the estate beyond the time allowed by law. A number of cases so hold, but this matter has been considered so fully in Feeney's Est., 293 Pa. 273,— where the life estates were held bad also, because testator's paramount purpose was to control the disposition of his property beyond the time allowed by the rule,— that we may be excused from more than restating the principle.

In the present will, unlike that in Feeney's Estate, testator's paramount purpose was to protect the shares given to his children, and the gifts in remainder were made simply because there had to be remainders, and he preferred to dispose of them by his will rather than have them pass under the intestate laws. This is made so clear from the résumé of his testamentary provisions above set forth, that we find it difficult even to imagine how he could have done anything else to more certainly show that his paramount purpose was to protect his children and make their future financially secure, unless he had expressly so stated. That purpose is not obscured by the fact that he was not able to learnedly reason regarding the rules against perpetuities and accumulations, vested and contingent remainders, executory devises and the other abstruse questions dwelt upon in the varying opinions of the court below and in the briefs of the respective counsel. His dominant purpose is made absolutely clear by the language of his will, whether or not his gifts in remainder are sustainable, and that is all we are concerned with at the present time. If it appeared that the striking down of the void gifts, would, in vital matters, so emasculate his plan of distribution, as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside (Johnston's Est., supra), this question

would be of importance. So far as concerns the gifts to the children, this is not so, however; whether or not that principle will be applicable to the remainder estates when they are being distributed, will be determined when that time arrives.

Concretely applying the foregoing conclusions to the decree of distribution on the account now before the court, we find there is nothing erroneous in it, except the award of the balance of the fund to the improperly selected trustees. When proper appointments are made that balance should be awarded to those then named.

The order of the court below appointing substituted trustees is reversed and the decree of distribution is affirmed, except as to the names of the trustees to whom the balance of the fund is awarded; the costs on these appeals are to be paid by testator's estate.