392 A.2d 1340

**ESTATE of Joseph Henry ZERBEY, Deceased.**

**Appeal of Alice J. JONES, Substitute Appellant at No. 445.**

**Appeal of Mildred Zerbey LAZARUS, Johanne Zerbey Martz, Margaretta Lazarus Paduch and Uzal H. Martz, Jr., Beneficiaries under the Will of Joseph Henry Zerbey, Deceased.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1978.

Decided Oct. 5, 1978.

A. Grant Sprecher, Walter E. Nelson, Jr., Philadelphia, for appellants at No. 458 and appellees at No. 445.

William J. Krencewicz, Shenandoah, for appellee, Elizabeth Zerbey Martz.

J. Brooke Aker, Norristown, for appellee, Malcolm D. Reeves, Guardian Trustee ad litem.

John B. McGurl, Jr., Pottsville, for appellees at Nos. 445 and 458.

James D. Crawford, Philadelphia, for appellee at No. 458.

## OPINION

NIX, Justice.

These appeals are by the surviving trustees and by some of the trust beneficiaries from the denial of a change of venue and from the appointment of successor trustees by the Schuylkill County Court of Common Pleas, Orphans' Court Division. We have jurisdiction pursuant to 42 Pa.C.S. § 722(3) (1977). We affirm the lower court.

Joseph Henry Zerbey died in 1933 and by will created three trusts. Each trust was to have the same four trustees. The primary trust was the Newspaper Trust which holds as its principal asset 5960 of the 6000 issued and outstanding voting common shares in J. H. Zerbey Newspapers, Inc., publisher of the *Pottsville Republican* newspaper. This trust will continue until the testator's last surviving child dies at which time the corpus will be distributed to testator's then living grandchildren, if any, or to testator's heirs. Testator was survived by four children of which two daughters, Elizabeth Zerbey Martz (appellee) and Mildred Zerbey Lazarus (appellant) are still living.

The twelfth clause of testator's will established the mechanism for the appointment of successor trustees:

"TWELFTH: I order and direct that the President Judge of the Orphans' Court of Schuylkill County shall appoint any vacancies which may exist by death, resignation or otherwise, in the number of my trustees or executors, it being my intent that there should at all times be the same number of trustees and executors. The said appointment shall be made upon the petition of the surviving trustees or executors or any of them."

Two trustees died in the fall of 1975. The two surviving trustees petitioned the lower court for the appointment of successor trustees pursuant to the twelfth clause of the will. The surviving trustees nominated Nadine F. Oswald and Margaretta Paduch to succeed the deceased trustees. These

nominees were opposed by one of testator's daughters—Elizabeth Zerbey Martz—an income beneficiary of the trust, who asked the court to exercise its discretion to appoint completely independent trustees.

The lower court held hearings on the conflicting positions and on March 8, 1976, the court appointed as successor trustees two individuals who had not been nominated and who had no connection either with the Zerbey family or with the newspaper corporation: Thomas A. Elliott, Jr. and Willis R. Parnell. The court's order was signed by Orphans' Division Judge Bowe and by Common Pleas President Judge Curran. The surviving trustees and certain of the beneficiaries filed exceptions and petitions requesting change of venue. The lower court dismissed the preliminary objections on November 8, 1976 and granted all parties full and complete hearings, in November and December, 1976, on their exceptions and petitions for change of venue. By order of April 18, 1977, Judge Bowe and President Judge Curran dismissed the petitions for change of venue as well as appellants' exceptions, and confirmed the appointments of Messrs. Parnell and Elliott as trustees. Appellants then filed these appeals.

This is not the first time we have been called upon to review the twelfth clause of this will, see *Zerbey Estate*, 356 Pa. 2, 50 A.2d 681 (1947) (Zerbey I). However, the unification of the Pennsylvania judicial system in 1969 has caused an ambiguity in the will that was not earlier present. While the twelfth clause gives the power to appoint successor trustees to "the President Judge of the Orphans' Court of Schuylkill County," as of January 1, 1969, the Orphans' Court was abolished and became the Orphans' Court Division of the Court of Common Pleas. See Pa.Const.Schedule to art. 5, § 4 (1969). Additionally, the president judge of the Orphans' Court became the president judge of the Orphans' Court Division of the Court of Common Pleas for the remainder of his term. *Id.*, § 5.

It is clear that testator intended that the judge presiding over orphans' court matters in Schuylkill County

to be the person who would appoint successor trustees. The title given this person is unimportant as long as he exercises the powers of the president judge of the Orphans' Court. Thus, the presiding judge or the judge chosen to sit in the Orphans' Court Division of the Schuylkill County Court of Common Pleas i. e. Judge Bowe, is the successor to the power to appoint trustees granted in the past to the president judge of the Orphans' Court by the twelfth clause of testator's will. Our analysis of testator's intent also leads us to conclude that the participation of Common Pleas Court President Judge Curran in these proceedings was superfluous.

Appellants allege that Judge Bowe's rejection of their suggested nominees was an abuse of discretion and that there existed sufficient grounds upon which their petition for a change of venue should have been granted. The general rule is that substituted trustees should be selected from among the nominations made by the parties in interest, if the nominees are qualified. *Anderton v. Patterson*, 363 Pa. 121, 69 A.2d 87 (1949); *McCaskey's Estate*, 293 Pa. 497, 143 A. 209 (1928). However, this rule does not apply when the trust agreement contains contrary provisions, such as those in clause twelve of the will before us. *Zerbey I, supra; Stolzenbach's Estate*, 346 Pa. 74, 29 A.2d 6 (1943). In these cases, the exercise of the court's sound discretion is the criterion for the exercise of its appointive power. See *Taylor's Estate*, 320 Pa. 1, 181 A. 482 (1935); *McCaskey's Estate, supra*. This is especially true where, as here, the trust agreement has expressly committed the appointive power to the Orphans' Court.

Appellants contend that past decisions of this Court and a settlement agreement approved by the Orphans' Court on March 18, 1968, compelled Judge Bowe to appoint as successor trustees members of the Zerbey family or employees of the newspaper. Thus they contend that Judge Bowe's refusal to appoint one of the grandchildren of testator and an employee of *The Republican* was error. The basic premise upon which appellants have built this argument is without support.

First, the twelfth clause does not contain even a hint that such was the intent of the testator. Second, in *Zerbey I, supra*, it was stated that the testator did not require the court to "appoint the persons nominated by the trustees; the final decision as to who is to be appointed lies with the President Judge of the Orphans' Court." *Zerbey I, supra*, 356 Pa. at 7, 50 A.2d at 683. Nor does the 1968 settlement agreement aid appellants' argument. Paragraph 5(a) of that agreement states that "the parties acknowledge the final responsibility of the Orphans' Court of Schuylkill County, in the event of a vacancy in the position of trustee, to appoint a successor trustee." Since the testator failed to place limits upon the class of persons who could be appointed trustee, Judge Bowe did not err in appointing two independent trustees.

The nominees of the surviving trustees and of the appellants to fill the first vacancy were Margaretta Lazarus Paduch or, in the alternative, Johanne Zerbey Martz or Uzal H. Martz, Jr. All three are grandchildren of the testator and beneficiaries of the trust. Although cestuis que trustent are not barred from being trustees for themselves and others, they are not altogether fit persons for the office of trustee due to the possible conflict between their interest as beneficiaries and their duty as trustees. *Fox Estate*, 264 Pa. 478, 107 A. 863 (1919). Additionally, Uzal H. Martz, Jr. is a director and president of the newspaper corporation, Johanne Zerbey Martz is assistant counsel for the corporation, and Margaretta Lazarus Paduch is a director and resides in New Jersey. It was not unreasonable for Judge Bowe to conclude that these nominees could not give the actions of the board of directors the objective scrutiny required as a trustee. Judge Bowe did not abuse his discretion by failing to appoint one of these three nominees.

The nominee for the second vacancy was Nadine F. Oswald who, at the time of her nomination, was a full time assistant to Uzal H. Martz, Jr., president of the newspaper corporation. Here again, the court below had a sufficient basis to conclude that Ms. Oswald could not be sufficiently disinterested to properly serve as trustee.

Appellants further contend that the appointments of Thomas A. Elliott, Jr. and Willis R. Parnell as successor trustees were tainted by illicit motives and purposes. Appellants' only allegation of impropriety in Judge Bowe's appointment of Mr. Parnell is as follows:

"Willis R. Parnell, at age 72, is a close personal friend and business associate of Judge Guy A. Bowe, Jr., and, in his former capacity as Trust Officer of the Tamaqua National Bank, and later an officer and member of the advisory board of the American Bank and Trust Company with which it merged, had both direct and indirect supervisory authority over the Trust holding the Tamaqua Courier newspaper as an asset during the time culminating with its demise as a newspaper."

Testimony given at the November 26, 1976 hearing shows that appellant's contentions are without merit. The testimony shows that Judge Bowe and Mr. Parnell serve on two bank advisory boards together, that Judge Bowe was a director at the Tamaqua National Bank while Mr. Parnell was in the employ of that bank prior to 1964, that Judge Bowe as an attorney at that time was one of the many attorneys engaged from time to time regarding trust estates administered by the Tamaqua Bank, that Judge Bowe and Mr. Parnell live in Hometown, Pa., and reside a few hundred feet from each other, and that though they are friends and have played golf together, they are not otherwise involved socially and do not move in the same social circles. These facts do not add up to a showing of favoritism or improper conduct on the part of Judge Bowe. The nature of the relationship between Judge Bowe and Mr. Parnell does not detract from the fact that Mr. Parnell is well qualified to handle trust duties.

Equally without merit is the contention that Mr. Parnell's actions caused the demise of the *Tamaqua Courier.* The record indicates that the *Courier* was sold long after Mr. Parnell had terminated his connection with the trust governing that newspaper. The record further shows that the *Courier* operated very profitably under Mr. Parnell's di-

rection. For these reasons we find that Judge Bowe did not abuse the sound discretion of the court in making this appointment.

With regard to the appointment of Mr. Elliott, all of appellants' allegations of misconduct and bias attach to President Judge Curran, and none involve Judge Bowe. Because we have concluded that President Judge Curran's participation in this matter was superfluous, and because the record indicates that Judge Bowe exercised his independent judgment in appointing Mr. Elliott as trustee, we find that Judge Bowe did not abuse the sound discretion of the court in appointing Mr. Elliott.

We further hold that Judge Bowe did not exhibit bias or interest sufficient to warrant a change of venue or transference of this case to another judge. We therefore affirm Judge Bowe's denial of appellants' petition for a change of venue. We find equally meritless appellants' exceptions to Judge Bowe's disposition of their various other petitions and motions.

The appointive power of the twelfth clause of the will was exercisable solely by Judge Bowe. However, lacking an interpretation by this Court of that clause in light of the abolition of the separate Orphans' Court structure and out of an abundance of caution, Judge Bowe and Schuylkill County Common Pleas Court President Judge Curran jointly heard four days of testimony on the petition for a change of venue and jointly signed the orders appointing Messrs. Parnell and Elliott as trustees, dismissing appellants' exceptions to those appointments, and dismissing the petition for a change of venue. Even though President Judge Curran sat in these proceedings with Judge Bowe, the record indicates that Judge Bowe's disposition of these matters was arrived at independently of President Judge Curran.

Because President Judge Curran participated fully in the proceedings below, fairness and the appearance of fairness dictate that we review appellants' allegations of bias and

interest on the part of President Judge Curran.[1] The gravaman of appellants' argument is that Mr. Elliott is controlled by President Judge Curran and that President Judge Curran has interests that directly conflict with those of the newspaper trust. Appellants accordingly contend that a change of venue should have been granted pursuant to Act of March 30, 1875, P.L. 35, 12 P.S. § 111 (Third)[2] or § 113(III)[3] (1953).

Appellants' claim that Mr. Elliott was not a proper choice for trustee is based on the following facts. Mr. Elliott is the chief operating officer and a director of the Minersville Bank and Trust Co., of which President Judge Curran is vice president and chairman of the Board; President Judge Curran's son is vice president, a director and solicitor for the

1. President Judge Curran's term expired January 2, 1978.

2. This act provides in relevant part:

Change of Venue For Interest or Prejudice

"Changes of venue shall be made in any civil cause, in law or in equity, depending in any of the courts of this Commonwealth, in the cases following; namely,—

First. Whenever the judge, who by law is required to try or hear the same, shall be personally interested in the event of such cause, or in the question to be determined thereby.

*     *     *     *     *     *

Third. Whenever any near relative of such judge shall be a party to any such cause, or interested in the event thereof, unless the judge so interested shall select another judge, learned in the law, not so related, to hear and determine the same."

*     *     *     *     *     *

Act of March 30, 1875, P.L. 35, 12 P.S. § 111 (1953). This act was not suspended by recent changes in Pennsylvania procedure, see Pa.R.C.P. No. 1006(d), 42 Pa.C.S.

3. This act provides in relevant part:

Further Grounds For Change of Venue

"Changes of venue may be made in any civil cause in law or equity depending in any of the courts of this commonwealth in cases following, to wit:

*     *     *     *     *     *

III. Whenever it shall be made to appear to the court that a fair and impartial trial cannot be had in the county in which any such case is depending."

*     *     *     *     *     *

Act of March 30, 1875, P.L. 35, 12 P.S. § 113 (1953). This act was not suspended by recent changes in Pennsylvania Procedure, see Pa.R.C.P. No. 1006(d), 42 Pa.C.S.

same bank; and President Judge Curran's nephew is the president and a director. Mr. Elliott, as part of his duties at the bank, approved a loan to President Judge Curran's son and nephew for the purchase of a local radio station that competes with the *Pottsville Republican* for news and advertising. This leads appellants to conclude that Mr. Elliott will be forced by his employers—President Judge Curran, his son, and nephew—to use his position as trustee to undermine the *Republican* to the advantage of the competing radio station owned by President Judge Curran's son and nephew. Appellants reach this conclusion by first assuming such obviously improper entreaties will be made by President Judge Curran, his son, or his nephew. Second, appellants assume that Mr. Elliott will be responsive to these entreaties.

In responding to these claims, a number of points must be made. First, the record is wholly devoid of any indication that the improper interference appellants fear will occur or that Mr. Elliott could reasonably be expected to be responsive to such pressure. Second, Mr. Elliott's impressive background in trust affairs weighs heavily against any presumption of future impropriety. Mr. Elliott was employed as a bank examiner in the United States Comptroller's Office in 1937. He has functioned as a commercial examiner, a trust examiner, a foreign department examiner and then from 1959 until 1970, he was employed by the United States Treasury Department, Comptroller of Currency, as a representative in trusts with the duty of examining National Banks exercising trust power in the Third National Bank Region. While he was employed with the United States Treasury Department, Mr. Elliott "examined the trust departments of practically every National Bank in the Commonwealth of Pennsylvania that were exercising trust powers, including our local banks, surrounding area banks and the major banks in the State of Pennsylvania." Mr. Elliott received the Albert Gallatin Award for outstanding service while employed by the Comptroller of the Currency. In 1970, he was employed by the Minersville Safe Deposit Bank

where he functions as a cashier, trust officer and a director. Mr. Elliott is a member of the executive committee of Group Two of the Pennsylvania Bankers' Association, and is a first vice president of the Schuylkill County Bankers Association. On occasion he has been a lecturer at the Pennsylvania Trust School conducted at Bucknell University.

Third, it must be remembered that the participation of President Judge Curran in these proceedings was entirely superfluous.

Fourth, appellants' allegations do not connect Mr. Elliott with President Judge Curran other than as an employee of a bank of which President Judge Curran is chairman of the board. The record indicates that neither Mr. Elliott nor President Judge Curran have financial interests of any sort in the corporation owning the competing radio station. The record further indicates that Mr. Elliott does not have any business connections with President Judge Curran, his son, or his nephew, other than through the Minersville Bank as part of his normal duties. In sum, the record indicates every reason to believe that Mr. Elliott will act with the utmost good faith and highest fidelity in administering the trust and in the performance of his fiduciary duties.[4]

For the foregoing reasons, we affirm the decree of the Orphans' Court Division. Each party to bear own costs.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., concurred in the result.

ROBERTS, Justice, concurring.

In Article XII of his 1933 will, Testator Joseph Zerbey directed "the President Judge of the Orphans' Court of

---

4. *See Holmes' Trust*, 392 Pa. 17, 139 A.2d 548 (1955); *see also In re Killey's Estate*, 457 Pa. 474, 326 A.2d 372 (1974). Of course, should a direct and continuing conflict actually develop between the trustee's personal interests and those of the trust, or should the trustee mismanage the estate to the disadvantage of the beneficiaries, proper grounds for the trustee's removal have been stated. *See* 20 Pa.C.S. §§ 3182(1), 7121; *Holmes' Trust, supra*; *McCaskey's Estate*, 293 Pa. 497, 143 A. 209 (1928).

Schuylkill County" to appoint successor trustees for the trusts his will created. He placed no express restrictions upon the class of potential trustees the President Judge could select. In view of testator's express, unrestricted delegation of authority, the Orphans' Court did not abuse its discretion in appointing trustees other than those nominated by the surviving trustees. I therefore agree with the majority that the decree of the orphans' court should be affirmed.